# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 5509 | **DATE** | 1/26/2002 |
| **CASE TITLE** | Roberge et al vs. Qualitek Internat'l, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we grant the plaintiffs' motion for summary judgment [7-1] pursuant to FRCP 56. The restrictive covenant not to compete included in Section IX of the Employment Contract is unenforceable as a matter of law and therefore void. If Roberge and Amtech still wish to proceed with their employment relationship, they are free to do so. The defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) [14-1] is denied. This is a final and appealable order. This case is terminated. The ruling date of 2/28/2002 is hereby stricken.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 28 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 39 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TSA | 02 JAN 28 AM 8:11 | date mailed notice | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GILBERT ROBERGE and AMTECH, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> QUALITEK INTERNATIONAL., INC., ) <br> ) <br> Defendant. ) | No. 01 C 5509 <br><br> Judge Wayne R. Andersen |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on plaintiffs Gilbert Roberge and Amtech, Inc.'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and defendant Qualitek International's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, the plaintiffs' motion for summary judgment is granted and the defendant's motion to dismiss is denied.

### BACKGROUND

Plaintiff Gilbert Roberge ("Roberge"), a Canadian citizen, has been employed in the electronics industry since 1980. According to the record in this case, Roberge was employed at CAE Electronics from 1980 to 1999 where he had supervisory and manufacturing responsibilities. Specifically, the record indicates that, while at CAE Electronics, Roberge worked on special projects such as building the circuit board for the cameras that were placed on the Canadian Arm of a project for NASA. (Roberge Dep. at 17.) In the fall of 1998, Roberge began working for a distributor of defendant Qualitek's products, Airtron Electronics. He was employed at CAE Electronics and Airtron Electronics simultaneously for 6 months. At Airtron,

Roberge sold consumable and capital equipment for the electronics industry in Quebec. (Roberge Dep. at 21-24.).

Plaintiff Amtech, Inc. ("Amtech") is a Connecticut corporation with its principal place of business in Branford, Connecticut. Amtech is engaged in the business of manufacturing and selling solder products for use in the electronics industry, and it conducts business both nationally and internationally. It is apparent from the record that Amtech is a competitor with Qualitek in the solder products business.

Defendant Qualitek International, Inc. ("Qualitek") is an Illinois corporation with its principal place of business in Addison, Illinois. Qualitek is an international supplier of high quality solder paste, soldering chemicals, and advanced solder products with approximately 300 employees worldwide.

In October of 1999, Ted Marek, National Sales Manager for Qualitek, approached Roberge regarding the possibility of him coming to work for Qualitek on a full-time basis. After a few weeks of negotiation, Roberge accepted Qualitek's offer of employment as Global Technical Support Manager, and he began work in that capacity in November of 1999. His responsibilities as Global Technical Support Manager were to include supporting Qualitek's products and salespeople by making recommendations to Qualitek's customers regarding problems on the production line. Specifically, Roberge was to advise certain Qualitek customers on how to better the performance of Qualitek's product. (Roberge Dep. at 47-49.)

Included with the materials Roberge received around the time he began his employment with Qualitek was a contract entitled "Employment Contract Protecting Trade Secrets and Assignment of Patent Rights" (hereinafter the "Employment Contract"). According to the

2

record, Roberge understood that his employment with Qualitek was contingent upon his agreement to the Employment Contract as drafted. While the exact date of the execution of the Employment Contract is in dispute, both parties agree that Roberge eventually did sign the contract.

Section IX of the Employment Contract contains, *inter alia*, a restrictive covenant not to compete, which is at issue in the instant case. In relevant part, Section IX provides:

> that upon termination of such employment for any cause whatsoever, [Roberge] will not either directly or indirectly, for himself or for any third party, without prior written authorization form [sic] [Qualitek], engage in competition with [Qualitek] for a period of two (2) years.

The Employment Contract also contains a provision which states that during his employment at Qualitek, and at all times thereafter, Roberge must "hold in secrecy . . . [e]ach and all of [Qualitek's] trade secrets, including secret processes, secret machines, secret formulas, and secret devices, now known to [Roberge] and those disclosed or divulged to [Roberge] by [Qualitek]. (Employment Contract, Section VIII.) Roberge performed his duties at Qualitek, pursuant to these conditions, from November, 1999 until April, 2001.

However, on or about April 12, 2001, Roberge's employment with Qualitek was terminated without cause. He was told that he was being laid off due to an industry slowdown and lack of available work at Qualitek. After his discharge from Qualitek, Roberge, as requested, returned the laptop computer that had been issued to him by Qualitek, and he stated in his declaration that he did not keep any documents concerning his employment at Qualitek other than copies of his job offer letter and the Employment Contract he had signed. (Roberge Decl. at ¶ 13.)

3

Shortly after his departure from Qualitek, Roberge contacted Amtech to inquire about potential employment opportunities with that company. In so doing, Roberge disclosed to the relevant individuals at Amtech that he had signed the Employment Contract with Qualitek and that said contract contained the covenant not to compete. As a result of the discussions between Roberge and Amtech, and apparently because Amtech was impressed with Roberge's qualifications, Amtech offered Roberge a position as Product Support Manager. However, because Amtech was concerned about the restrictions contained in the Employment Contract, Amtech's offer of employment to Roberge was and continues to be conditioned upon either Qualitek's written authorization that Roberge may engage in such employment with Amtech or a declaration from a court of competent jurisdiction that the covenant not to compete is unenforceable.

On June 14, 2001, in an attempt to avoid a legal dispute, Amtech wrote to Qualitek requesting confirmation that Qualitek did not object to the employment of Roberge by Amtech. On June 19, 2001, Qualitek responded to Amtech's letter by stating that they did in fact take issue with Roberge's potential employment at Amtech. Specifically, in its June 19 letter, Qualitek stated "we intent [sic] to pursue any breach of our Agreement in all legal avenues that are open to us . . . . Mr. Roberge, having been privileged to proprietary information, and therefore under the circumstances, will put us in a disadvantageous position if directly employed by our competitor."

Notwithstanding the legal position taken by Qualitek, Roberge has accepted Amtech's conditional offer of employment. However, in light of Qualitek's refusal to consent to his employment with Amtech, he is unwilling to commence employment with Amtech if the

4

restrictions contained in the Employment Contract are found to be enforceable and such employment would constitute a breach of the Employment Contract. Likewise, Amtech is unwilling to employ Roberge without the assurance that doing so is lawful and not prohibited by the Employment Contract. Consequently, since June, 2001, Roberge has been working in Canada for substantially less than he would have been making at Amtech.

In August, 2001, Roberge and Amtech filed a declaratory judgment action against Qualitek, pursuant to 28 U.S.C. § 2201, seeking an order from this Court declaring the covenant not to compete in the Employment Contract void and unenforceable. The intended effect of this declaratory judgment would be to permit Roberge to commence his position with Amtech. Concurrent with the filing of the complaint for declaratory judgment, Roberge and Amtech filed the instant motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## DISCUSSION

### I. Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). A genuine dispute about a material fact exists only if

5

the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party and should not make credibility determinations or weigh evidence. *Association Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir. 1994). The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex*, 477 U.S. at 324. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson*, 477 U.S. at 252.

In this case, the plaintiffs have argued they are entitled to summary judgment on their complaint for declaratory judgment because the competition restrictions contained in Section IX of the Employment Contract are unreasonably broad according to Illinois law, and thus void and unenforceable. Specifically, the plaintiffs argue that, because this particular restrictive covenant contains no geographic limitation, it essentially restricts Roberge's ability to earn a living in his chosen profession not only in this country but also potentially anywhere else in the world for a period of two years. As a result, plaintiffs contend that the covenant not to compete is unreasonably broad, against public policy, and void as a matter of law.

The defendant counters these arguments by suggesting that, though the restrictive covenant admittedly contains no geographic limits, it is enforceable because it was "reasonably"

drawn to protect Qualitek's legitimate business interests. In particular, Qualitek argues that its covenant not to compete is legitimate because it does business nationwide, and the purpose of the restriction is to protect Qualitek from losing any customers, wherever they may be, to former employees who presumably have gained special knowledge and familiarity with the customers' needs. In the alternative, Qualitek requests that if we determine that the restrictive covenant is overly broad as a matter of law, then we should "blue-pencil" or modify the Employment Contract to either prohibit Roberge from working at Amtech or prohibit him from having contact with Qualitek's customers that are not customers of Amtech. For the following reasons, we conclude that the plaintiffs are entitled to judgment as a matter of law on their complaint for a declaratory judgment.

At the outset, we note that both parties agree that the Employment Contract contains a choice of law provision which states that the agreement "shall be construed under the laws of the State of Illinois." (Employment Contract at 3.) Consequently, under Illinois law, the enforceability of a covenant not to compete is a question of law, and thus amenable to resolution by means of a motion for summary judgment. *See Lyle R. Jager Agency, Inc. v. Steward*, 253 Ill. App. 3d 631, 625 N.E.2d 397, 400 (Ill. App. Ct. 1993).

In Illinois, restrictive covenants are disfavored in the law and closely scrutinized because they are repugnant to the public policy encouraging an open and competitive marketplace. *Bishop v. Lakeland Animal Hosp.*, 268 Ill. App. 3d 114, 644 N.E.2d 33, 36 (Ill. App. Ct. 1994). This is especially true in the case of covenants not to compete, which Illinois courts have held to be restraints on trade. *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 599 N.E.2d 1072, 1079 (Ill. App. Ct. 1992). As a result, courts will only enforce the provisions of a

restrictive covenant if the time and geographical limitations are reasonably necessary to protect a legitimate business interest of the employer. *Trailer Leasing Co. v. Associates Commercial Corp.*, 1996 WL 392135, at *1 (N.D. Ill. July 10, 1996) (applying Illinois law); *Abel v. Fox*, 274 Ill. App. 3d 811, 654 N.E.2d 591, 593 (Ill. App. Ct. 1995). Geographic limitations on the scope of a restrictive covenant are significant because Illinois courts will not enforce agreements that restrict an employee's ability to work for a competitor in any manner whatsoever. *See Telxon Corp. v. Hoffman*, 720 F. Supp. 657, 665 (N.D. Ill. 1989); *North Am. Paper Co. v. Unterberger*, 172 Ill. App. 3d 410, 526 N.E.2d 621, 623 (Ill. App. Ct. 1988).

This is not to say, of course, that all restrictive covenants which do not contain geographic limitations are *per se* unenforceable. Illinois courts have recognized a distinction between those agreements that contain a blanket prohibition on competition and those that limit an employee from engaging in particular types of activities with competitors after they leave the employ of the former employer. The most prevalent of these "activity restraints" is the soliciting of the former employer's customers. *See Eichmann v. Nat'l Hosp. and Health Care Services, Inc.*, 308 Ill. App. 3d 337, 719 N.E.2d 1141, 1147 (Ill. App. Ct. 1999). In *Eichmann*, the Illinois Appellate Court noted the difference between these types of restrictive covenants by stating that the "distinction between a blanket prohibition on competition and an activity restraint is important because the lack of a geographical restriction does not *automatically* invalidate a post-employment restraint where the geographical prohibition is qualified by an activity restraint." *Id.* (emphasis in original.) The issue then in the instant case is whether the restrictive covenant contained in Section IX of the Employment Contract is a blanket restriction or an activity restraint.

The logical place to begin this analysis is of course with the actual text of the agreement entered into by Roberge and Qualitek. The first part of Section IX contains a disclosure covenant in which Roberge agreed not to disclose, either during or after his employment with Qualitek, any confidential or proprietary information he received while employed there. Roberge has stated in his declaration that he never came into contact with any confidential or proprietary information while employed at Qualitek, and Qualitek has not identified any confidential information, trade secret, or secret process shared with Roberge during his employment. Rather, Qualitek has only argued that Roberge was familiar with certain undisclosed research information as well as the particular product needs of some of Qualitek's larger customers. As this type of information was readily accessible to not only Qualitek employees but also to Qualitek customers (particularly the product requirements of those customers), we cannot justifiably restrict Roberge's future employment in the solder products industry on this basis. This conclusion is further bolstered by Qualitek's inability to identify even one trade secret or secret process which Roberge was allegedly privy to that could endanger Qualitek's competitive advantage in the solder products industry.

That having been said, we next turn to the second part of Section IX of the Employment Contract, which is the actual covenant not to compete. It states that "upon termination of . . . employment for any cause whatsoever, [Roberge] will not either directly or indirectly . . . engage in competition with [Qualitek] for a period of two (2) years." Even granting this language the most generous interpretation, there is no way it can be read other than to constitute a blanket prohibition on competition. The restrictive covenant is not limited to a particular type of activity, such as the solicitation of customers Roberge had contact with while at Qualitek, nor does it

9

contain any other activity restraint. Rather, it unequivocally states that Roberge cannot work for any company that is a direct or indirect competitor of Qualitek's, regardless of where that competitor operates. In fact, Qualitek has conceded in its papers that they view the covenant not to compete as having global effect, suggesting that if Roberge wanted to work for a company in Japan that competes with Qualitek in the solder products market, he would be unable to do so. *But see Unterberger*, 526 N.E.2d at 625; *Dryvit Sys., Inc. v. Rushing*, 132 Ill. App. 3d 9, 477 N.E.2d 35, 38 (Ill. App. Ct. 1985) ("the unlimited geographic constraints . . . are patently beyond the needs of the employer to protect his interest and are unduly harsh on the employee.")

Qualitek attempts to defend its restrictive covenant by arguing that, even though there is no geographic limitation in the restrictive covenant, it is nevertheless still enforceable because it is necessary to protect its business interests not only in this country but in other countries around the world. Qualitek supports this broad argument by stating that the area in which Roberge is restricted from working (i.e. the planet Earth) is "coextensive with the area in which the employer is doing business." (Def. Response at 7.) In particular, Qualitek asserts that because it has "customers globally and has competitors throughout the United States . . . [i]nserting an arbitrary boundary such as prohibiting Roberge from competing with Qualitek in the state of Illinois . . . would not protect Qualitek's legitimate interests." (*Id.* at 8.) While this is perhaps the most logical argument the defendant could make in response to the plaintiffs' motion, it is a position that has been rejected countless times by both state and federal courts in Illinois. *See, e.g., Telxon*, 720 F. Supp. at 664-65 (motion for preliminary injunction denied because restrictive covenant lacking any identifiable geographic limitation would have even prevented employee from "working as competitor's janitor"); *Dryvit Sys.*, 477 N.E.2d at 38 ("the unlimited

10

geographic constraints on competitive activities . . . and the further restriction from association with a corporation whose activities are competitive in the continental United States are patently beyond the needs of the employer to protect his interest and are unduly harsh on the employee"); *Egnell, Inc. v. Weniger*, 94 Ill. App. 3d 325, 418 N.E.2d 915, 918 (Ill. App. Ct. 1981) (pursuant to restrictive covenant which contained no actual geographic limitation, employee would not have been permitted to work anywhere in the world for a firm that competed with employer somewhere in the U.S. "The burden placed on [employee] far exceeds what would have been necessary for the protection of plaintiff's interest.").

Given this compelling authority, we reject Qualitek's argument that the lack of geographic limitation in Section IX is acceptable because it is necessary to protect Qualitek from the potential loss of some its customers located anywhere throughout the world. The covenant not to compete is so broad that, like in *Texlon*, it is conceivable that Roberge would be prohibited from working as a janitor for a company that, either directly or indirectly, competed with Qualitek in the solder products industry. There is simply no legitimate business interest of Qualitek that can justify such a ridiculous result.

Further, Qualitek attempts to avoid the inevitable in this case by suggesting in its papers that there is at least one genuine issue of material fact which prevents our granting of the plaintiffs' motion for summary judgment. Specifically, Qualitek contends that there is a material factual dispute concerning the execution of the Employment Contract. Roberge asserts that he did not actually sign the Employment Contract until January, 2000, at which time he alleges that he was required to post-date his signature to November 8, 1999. Qualitek, on the other hand, argues that Roberge actually signed the contract on November 8, 1999 (the date indicated next to

11

Roberge's signature) and that he did not sign it in January, 2000. We conclude that this perceived genuine issue of material fact is really just a red herring, and a particularly odoriferous one at that.

Qualitek must do more than simply show that there is some trivial doubt as to the material facts in this case. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). It must present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and only if a reasonable jury could render a verdict for them can they defeat summary judgment. *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000). Material facts are those pertinent to the outcome of the issues identified in the motion for summary judgment. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). In this case, the execution date of the Employment Contract is irrelevant to the primary issue presented by the plaintiffs in their summary judgment motion - whether the restrictive covenant is so broad as to be void and unenforceable. This is so because neither party disputes the fact that the Employment Contract was fully executed, regardless of the date on which Roberge actually signed it, at least a year before Roberge was discharged by Qualitek.

Finally, Qualitek requests that, if we intend to find the restrictive covenant unenforceable as written, then we should utilize our equitable power to modify the Employment Contract so as to prevent Roberge from having contact with any Qualitek customer. While a trial court may employ equity principles and modify the restraints embodied in an employment contract and enforce the restraints as modified, the fairness of the restraints imposed in the written agreement is a relevant consideration to the application of such equity principles. *See Unterberger*, 526 N.E.2d at 625; *House of Vinson, Inc. v. Hiyane*, 37 Ill.2d 32, 225 N.E.2d 21, 25 (1967). In this

12

case, we will not exercise our discretion to "blue-pencil" the contract, but rather we hold that the covenant not to compete as executed is unenforceable as a matter of law. In so doing, we hope to encourage employers to write contracts that are more narrowly tailored to meet their individual needs, rather than overly broad covenants which restrict competition in the marketplace for qualified employees. *See also Trailer Leasing*, 1996 WL 392135 at *4; *Telxon*, 720 F. Supp. at 666.

Therefore, based on the arguments raised in the briefs and for the reasons stated above, we declare that the restrictive covenant contained in Section IX of the Employment Contract is overbroad in that it contains no geographic limitation on its scope. Accordingly, we conclude that the restrictive covenant is unenforceable as a matter of law and therefore void. The plaintiffs' motion for summary judgment is granted.

## II.     Motion to Dismiss

Concurrent with the plaintiffs' motion for summary judgment, defendant Qualitek also filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Specifically, Qualitek alleges that the plaintiffs have failed to establish that the amount in controversy in this declaratory action is at least $75,000, as required by 28 U.S.C. § 1332. We disagree.

In a declaratory judgment action, we measure the amount in controversy by the value of the "object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434 (1977). "[W]hen deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." *Barbers v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997). If the amount in controversy is uncontested, the court "will

accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)); *see also Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998). However, when the amount in controversy is challenged, the party asserting jurisdiction is required to submit "competent proof" that the amount in controversy exceeds $75,000. *See Target Mkt. Publishing, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1142 (7th Cir. 1998); *Rexford Rand Corp.*, 58 F.3d at 1218. "Competent proof means proof to a reasonable probability that jurisdiction exists." *Id.* at 1218 (internal quotations and citation omitted).

In this case, we conclude that the plaintiffs have submitted competent proof in their response to the motion to dismiss to establish that the amount in controversy exceeds $75,000. The central dispute in this motion to dismiss is the value of the compensation Roberge was potentially required to forego as a result of the restrictive covenant contained in the Employment Contract. Qualitek argues that Roberge is currently earning $70,000 plus commission in his present job in Canada and that he will actually lose money over the next two years if he accepts employment with Amtech. To Qualitek, this means there actually is no amount in controversy in this case. The plaintiffs, on the other hand, contend that enforcement of the two-year restrictive covenant will cause Roberge to lose $150,000 of income from Amtech as well as cause Amtech to lose the value of Roberge's services. We agree with the plaintiffs.

The plaintiffs have submitted compelling proof in the form of declarations and deposition testimony that the minimum amount in controversy in this case is $88,000 and the maximum amount is $150,000. The $88,000 figure comes from a recognition that the $70,000 amount

14

Qualitek cites as Roberge's current salary in Canada is actually based on the Canadian dollar and not the U.S. dollar. Under the current exchange rate, Roberge is making approximately $44,000 (U.S. dollars) per year, plus an employer funded pension contribution. As a result, over the course of the two year restrictive period in the Employment Contract, Roberge stands to lose at least $88,000 in income. Therefore, we conclude that the amount in controversy in this case exceeds the statutory amount of $75,000. The defendant's motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, we grant the plaintiffs' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The restrictive covenant not to compete included in Section IX of the Employment Contract is unenforceable as a matter of law and therefore void. If Roberge and Amtech still wish to proceed with their employment relationship, they are free to do so. The defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is denied. This is a final and appealable order. This case is terminated. The ruling date set for February 28, 2002 is hereby stricken.

It is so ordered.

/Wayne R. Andersen
United States District Judge

Dated: January 25, 2002

15